**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO. 3:12-CR-00088**

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**v.**

**WILLIAM OTTO AYERS**                                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is comes before the Court on the Defendant's motion to dismiss Counts 2 through 8 of the Superseding Indictment. (Def.'s Mot., Docket Number ("DN") 22.) The Government has responded. (Gov't's Resp., DN 26.) At a telephonic conference held before the Court, the Defendant indicated that he would not file a reply. This matter is now ripe for adjudication. Having considered the matter, the Defendant's motion is **GRANTED**.

**I.**

Federal law and regulation require certain financial institutions, such as banks, to submit transaction reports to the Internal Revenue Services for any deposits, withdraws, currency exchanges, payments, or other transfers in excess of $10,000. *See* 31 U.S.C. § 5313; 31 C.F.R. §§ 1010.311, 1010.313. One commits the crime of "structuring" when he or she coordinates financial transactions so as to purposefully "evade the reporting requirements of section 5313(a)." 31 U.S.C. § 5324(a)(3). A person structures a transaction if he or she "conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements[.]" 31 C.F.R. § 1010.100(xx); *see Ratzlaf v. United States*, 510 U.S. 135, 136 (1994) (defining structuring as the "break[ing] up [of] a single transaction above the reporting threshold into two or more separate transactions–for the purpose of evading a financial

1

institution's reporting requirements"). "The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring[.]" 31 C.F.R. § 1010.100(xx).

## II.

In the original Indictment, filed on July 3, 2012, Defendant William Ayers ("Ayers") was charged with one count of structuring, in violation of 31 U.S.C. §§ 5324(a)(3) and (d). On December 19, 2012, the Government filed a Superseding Indictment, charging Ayers with eight counts of violating the same provisions. Notably, the Superseding Indictment did not contain new information or allege violation of other laws. Rather, it alleged one count of structuring for each of the eight days on which transactions in Ayers's bank accounts exceed $10,000 in aggregate. Ayers now seeks to dismiss the Superseding Indictment on grounds that it charges a single offense in multiple counts and therefore violates the Double Jeopardy Clause of the Fifth Amendment.

According to the allegations in the Superseding Indictment, which the Court presumes to be true for the purposes of a motion to dismiss, Ayers maintained bank accounts with five separate financial institutions between March 2011 and April 2011. On eight different days[1] during this period he deposited money into these accounts. He only made one deposit per bank per day, and the individual deposits never exceeded $10,000. In aggregate, however, the deposits on each of the eight days were in excess of $10,000. For example, on March 28, 2011, Ayers deposited $9,000 in each of his accounts at Republic Bank, PNC Bank, Fifth Third Bank, Kentucky Telco Credit Union, and Old National Bank, for a total of $45,000. At the end of the eight days, the total amount deposited was $287,000. The Superseding Indictment is silent as to

---

[1] Ayers made deposits, in aggregate, of more than $10,000 on the following dates: (1) March 25, 2011; (2) March 28, 2011; (3) March 29, 2011; (4) March 30, 2011; (5) March 31, 2011; (6) April 21, 2011; (7) April 22, 2011; and (8) April 27, 2011.

whether these funds were derived from a single source or were drawn from multiple sources. Eventually, Ayers withdrew a substantial portion of these funds and deposited them in a T.D. Ameritrade account, which was subsequently seized by the Government.

### III.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The protections of the Amendment extend to a "multiplicitous" indictment. "Multiplicity is charging a single offense in more than one count in an indictment." *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008) (internal quotation marks omitted). To determine whether an indictment is multiplicitous, a court must consider the "unit of prosecution" for the underlying offense. *See Bell v. United States*, 394 U.S. 81 (1955). The "unit of prosecution" is to be determined from the text of the statute as expressed by Congress, and where "Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Id.* at 83.

### IV.

The issue before the Court is whether the Government can charge Ayers with a count of structuring for each of the eight days in which his deposits exceeded $10,000 or whether the series of transactions in March and April of 2011 can only be charged as a single "unit of prosecution." The Court is not the first to take up this issue.

One of the first cases addressing the "unit of prosecution" in a structuring case was *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991). There, the Davenports obtained $100,000 in cash through unknown means, and "[b]etween November 5 and November 19 they made ten separate cash deposits, each of less than $10,000, totaling $81,500, in multiple

3

branches of two banks in which they had accounts." *Id.* at 1171. The indictment charged "each of the ten deposits as a separate violation of [§ 5324(a)(3)]." The Seventh Circuit ultimately vacated the multiplicitous charges on grounds that "[§ 5324(a)(3)] does not forbid the making of deposits. It forbids the structuring of a transaction." *Id.*

The Davenports possessed a single source of funds and divided it into multiple deposits to avoid the reporting requirements. Even with multiple deposits, "[t]here was one structuring, one violation." *Id.* Allowing the Government to charge a separate count of structuring for each deposit would lead to "weird results." *Id.* "[I]f a defendant receives $10,000 and splits it up into 100 deposits he is ten times guiltier than a defendant who splits up the same amount into ten deposits." *Id.* Accordingly, the court held that "the structuring itself, and not the individual deposit, is the unit of crime." *Id.* at 1172.

A few months after *Davenport* was decided, the Tenth Circuit addressed similar issues in *United States v. Nall*, 949 F.2d 301 (10th Cir. 1991). In that case, Nall received a $26,000 lump sum payment from McIntosh. *Id.* at 304. Nall then made three deposits to a bank between "June 9 [and] June 15, all in amounts below the $10,000 level that would have triggered the reporting requirements[.]" *Id.* at 307. The Government charged him with three separate counts of structuring. The court vacated Nall's convictions on two of the three counts, finding them multiplicitous. *Id.* at 308. Relying on *Davenport*, the court found that "Nall committed one structuring violation respecting the $26,000 lump sum payment, comprised of three individual deposits, and there should have been only one structuring count . . ." *Id.*

One distinction between the case *sub judice* and *Davenport-Nall* is that the Superseding Indictment is silent as to whether the money Ayers deposited over the eight days was drawn from a single source or originated from multiple sources. While this distinction may alter the analysis

4

in some circumstances, it is inconsequential here because the Government bases the eight structuring counts on the temporal nature of the transactions (*i.e.*, deposits in eight twenty-four hour periods resulted in eight separate counts of structuring) and not the source of the funds.

Whether a defendant could be charged with multiple counts of structuring based on temporal division was addressed in *United States v. Handakas*, 286 F.3d 92 (2d Cir. 2002) *overruled on other grounds by United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003). Count two of Handakas's indictment charged that he structured "transactions exceeding $100,000 in order to evade tax reporting requirements over the period May 1996 through May 1997. Count three charge[d] Handakas with the same offense over the period May 1997 through May 1998." *Handakas*, 286 F.3d at 98. The Government argued that it could prosecute separate counts of structuring because "the structuring occurred over a 24-month period and involved the concealment of more than $100,000 within each 12-month period." *Id.* The Second Circuit rejected this argument, however, finding that "no provision of [§ 5324(a)(3)] indicates that a single count of structuring can be segmented based on 12-month intervals (*or any other intervals of time*) or by the amount of funds in any interval." *Id.* (emphasis added). "[T]he number of structuring offenses (i.e., 'units of prosecution') is not determined by the number of fractional, sub-liminal transactions made for concealment." *Id.* at 99 (citing *Nall*, 949 F.2d at 308). Accordingly, the court found that Handakas was improperly convicted of two counts of structuring and remanded to the district court for resentencing. *Id.* at 100.

*United States v. Kushner*, 256 F. Supp. 2d 109 (D. Mass. 2003), is similar to the present case. The *Kushner* defendants allegedly operated "an unlicensed money-lending and check-cashing business between January 1995 and February 1999." *Id.* at 111. During this period, they "deposited over $15 million into [their] accounts and withdrew large sums of money from the

accounts by cashing checks against them." *Id.* Most importantly, they were accused of withdrawing "this currency in particular increments [on a daily basis] so as to avoid any single withdrawal that would have exceeded the $10,000 reporting threshold[.]" *Id.* They were charged with 100 counts of structuring in violation of § 5324(a)(3). *Id.*

The defendants moved to dismiss all but one of the structuring claims "because each count merely represent[ed] a component of a single course of conduct–that is, one 'structuring.'" *Id.* at 112. The Government responded that each count represented an independent act of structuring and could be charged separately. *Id.* Relying on the *Davenport-Nall-Handakas* series of cases, the court rejected the Government's argument and agreed with the defendants. As the court explained:

> It is not the day, however, that is critical or even significant to the structuring here. *All* of the money within the Defendants' accounts was the product of the Defendants' unlicensed business, and it was the sum in its entirely that the Defendants sought to conceal. . . . It is no more compelling to argue that the amount the Defendants were structuring at any given time spanned two days, two weeks, or two months than to argue that they were structuring daily transactions.

*Id.* at 113. Accordingly, the defendants could only be charged with one count of structuring because "the structuring . . . was not conducted so as to withdraw distinct amounts of money daily to avoid the reporting requirements; it was structured so that the daily reporting requirements would reveal neither the overall scheme, nor the substantial amounts of cash the Defendants illegally received from various sources." *Id.* at 114.

The *Kushner* Court also addressed whether the Government could charge multiple counts of structuring if the money derived from multiple sources. "If the Government chooses to identify the various sources from which the money in the Defendants' accounts was derived, that is, the various amounts 'paid' by the Defendants' 'clients' or 'customers,' the Government could so charge these transactions as separate structuring counts . . . ." *Id.* But where the Government

cannot identify the source of the funds, it "may only sustain one count of structuring that spanned the relevant time period." *Id.* Accordingly, while it is possible to charge a defendant with multiple counts of structuring, the Government must first identify the separate sources of the structured funds in order to do so.

## V.

Applying the reasoning reflected in *Davenport*, *Nall*, *Handakas*, and *Kushner* to the present case, the Court finds the structuring charges to be multiplicitous. First, the Government failed to identify the source of Ayers's deposits. Where the Government cannot identify whether the funds originated from a single source or multiple ones, it "may only sustain one count of structuring that spanned the relevant time period." *Kushner*, 256 F. Supp. 2d at 114. Second, the Superseding Indictment clearly ties the separate charges of structuring to the individual dates on which Ayers's deposits exceeded $10,000. As explained in *Handakas*, however, "no provision of [§ 5324(a)(3)] indicates that a single course of structuring can be segmented based on 12-month intervals (or any other intervals of time) or by the amount of funds in any interval." *Handakas*, 286 F. 3d at 98. Structuring does not criminalize deposits or withdraws of money within a certain temporal period. Rather, it criminalizes arranging those transactions so as to avoid the reporting requirements. *See Davenport*, 929 F.2d at 1171-72. Here, the different counts alleged in the Superseding Indictment merely represent components in a single structuring. There was only one structuring

Finally, to the extent that the Government relies on *United States v. Coney*, No. CR.A. 02-321, 2003 WL 2004437 (E.D. La. April 30, 2003), that case is readily distinguishable from the present circumstances. In *Coney*, the defendant was a personal injury attorney who paid "runners" $500 cash to solicit clients. *Id.* at *1. Coney obtained the cash necessary to pay the

runners by having his employees frequently cash checks at local banks. He always instructed his employees to make the checks less than $10,000 in order to avoid the reporting requirements. *Id.* He was charged with ten counts of structuring for violating § 5324(a)(3) from 1997 through 2001. "Each count identifie[d] a two-day period wherein individual checks where cashed in amounts less than $10,000." *Id.*

Coney sought to dismiss all but one of the structuring counts on grounds that they were multiplicitous. *Id.* at *5. Citing *Davenport* and *Nall*, the court acknowledged that "[i]n most cases where courts have found structuring counts to be multiplicitous, the indictment has charged separate counts for each deposit or transaction that was made, rather than group them together." *Id.* The circumstances before the *Coney* Court were different, however, because the focus was on Coney's *use* of the funds to pay the runners. *Id.* at *6. "In most structuring cases, like *Kushner* and *Handankas* [sic], the government's focus is on the *source* of the funds. In Coney's case, however, the focus is not on the source of the funds but on its *use*." *Id.* (emphasis added). Therefore, "each time cash was withdrawn from the bank, it constituted an individual payment to a runner for cases referred," and was an individual structuring violation that could be charged separately. *Id.*

In the present case, the Government's focus is clearly not on Ayers's use of the funds but on the deposits that allegedly evaded the reporting requirements. Furthermore, even if the Government's focus was on Ayers's use of the funds, *Coney* still does not provide support for the Government's position. Ayers did not make withdraws for payment or distribution to multiple third-parties. He allegedly withdrew the money and deposited it in his *own* T.D. Ameritrade account. This was a single action and could only result in one charge of structuring if performed in manner aimed at evading the reporting requirements. The Government's focus is

8

not on Ayers's use of the funds but on the arrangement of the transactions that allegedly allowed him to avoid the reporting requirements. For these reasons, *Coney* is distinguishable and not persuasive in this case.

## CONCLUSION

Defendant William Ayers moved to dismiss Counts 2 through 8 of the Superseding Indictment because such charges were multiplicitous. For all of the foregoing reasons, the motion is **GRANTED**.